# EXHIBIT A

State Court Register of Action

# Register of Actions

| | | |
|---|---|---|
| **Filed by Plaintiff/Petitioner** | **Case Number:** | 2026CV031212 |
| **Filed by Defendant/Respondent** | **Case Type:** | Services Rendered |
| **Filed by Court** | **Case Caption:** | Noble Elite Telemonitoring Serv LLC v. Rcymt Hosp And Medical Serv Inc |

| | |
|---|---|
| **Division:** | 414 |
| **Judicial Officer:** | Ian J Kellogg |
| **Court Location:** | Denver County - District |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| DF288894E0B87 | 04/14/2026 7:35 AM | Brian Allen Williamson Esq. | Callagy Law PC | Noble Elite Telemonitoring Serv LLC | Civil Case Cover Sheet | District Court Civil Case Cover Sheet | Public |
| | | | | | Summons | District Court Civil Summons - Rocky Mountain Hospital and Medical Services Inc | Public |
| N/A | 04/10/2026 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| N/A (Details) | 04/09/2026 4:15 PM | Ian J Kellogg | Denver County - District | N/A | Order | Webex Procedures - Denver District Court - Courtroom 414 | Public |
| N/A (Details) | 04/09/2026 4:12 PM | Ian J Kellogg | Denver County - District | N/A | Order | Pretrial Order | Public |
| N/A (Details) | 04/09/2026 4:11 PM | Ian J Kellogg | Denver County - District | N/A | Order | Delay Reduction Order | Public |
| N/A | 04/09/2026 12:00 AM | N/A | N/A | N/A | Minute Order - No Print | N/A | |
| 8217CC9A4A872 | 04/03/2026 3:26 PM | Brian Allen Williamson Esq. | Callagy Law PC | Noble Elite Telemonitoring Services LLC | Complaint w/Jury Demand | Plaintiff's First Complaint w/attach | Public |
| | | | | | Exhibit - Attach to Pleading/Doc | Exhibit A to Plaintiff's First Complaint | Protected |

# Party Information

| Party Name | Party Type | Party Status | Attorney Name |
|---|---|---|---|
| Anthem Blue Cross And Blue Shield | DBA | Active | N/A |
| Noble Elite Telemonitoring Serv LLC | Plaintiff | Active | BRIAN ALLEN WILLIAMSON (Callagy Law PC) |
| Rcymt Hosp And Medical Serv Inc | Defendant | Active | N/A |

# EXHIBIT A-1

Complaint

| DENVER DISTRICT COURT<br>1437 Bannock Street<br>Denver, CO 80202<br>United States<br>(303) 606-2300 | ▲ COURT USE ONLY ▲<br>DATE FILED<br>April 3, 2026 3:26 PM<br>FILING ID: 8217CC9A4A872<br>CASE NUMBER: 2026CV31212 |
|---|---|
| Plaintiff: **NOBLE ELITE TELEMONITORING SERVICES, LLC**<br><br>v.<br><br>Defendant: **ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD** | Case No:<br><br>Division:<br><br>Courtroom: |
| Attorneys for Plaintiff:<br><br>*Brian A. Williamson (CO Bar No.336547)<br>Callagy Law<br>2550 W. Union Hills Ave., Ste. 350-341<br>Phoenix, AZ 85027<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>(201) 261-1700<br>(201) 549-8408 (facsimile)<br>bwilliamson@callagylaw.com | |
| **PLAINTIFF'S FIRST COMPLAINT** | |

Noble Elite Telemonitoring Services, LLC ("Plaintiff"), by and through its

attorneys, Callagy Law, P.C., submits this Complaint against Rocky Mountain Hospital and

1

Medical Service, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Defendant"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This action arises from Defendant's repeated and unjustified wrongful retention of funds belonging to the Plaintiff, unreasonable payment practices, and bad faith under state law related to prompt payment, fair trade practices, and fair dealing between insurance carriers and medical providers.

2. Plaintiff is a licensed medical provider that rendered medically necessary services to individuals covered by health benefit plans administered and/or insured by Defendant. Plaintiff timely submitted claims and supporting documentation. Where Defendant issued payment determinations that Plaintiff reasonably disputed due to considerable underpayment, Plaintiff engaged in the required open negotiation process and then initiated arbitration in the federal Independent Dispute Resolution process ("IDR") as contemplated by the federal No Surprises Act ("NSA").

3. Plaintiff prevailed in multiple IDR proceedings. Independent dispute resolution entities issued determinations identifying the additional amounts owed for specific services and dates of service. Those determinations, and the payment obligations arising from them, are final and binding as to the amounts due.

4. Despite the binding nature of these determinations, Defendant nevertheless has failed and refused to timely remit payment on multiple IDR determinations and related claim obligations, despite repeated notices and demands.

2

5.      This case is therefore not a dispute about whether services were provided or whether the IDR process occurred. Rather, it concerns Defendant's withholding and retention of monies owed – after Plaintiff delivered care, complied with required processes, and obtained determinations confirming the amounts due.

6.      Defendant's nonpayment and delay have caused foreseeable harm to Plaintiff, including loss of funds necessary to operate a clinical practice, increased administrative and collection costs, and the time-value loss of money that should have been paid when due.  Defendant's behavior has also unjustly enriched Defendant at the expense of Plaintiff.

7.      Separately and additionally, Defendant's failure to timely pay clean claims and other amounts due implicates state prompt payment requirements. In Colorado, health insurance companies ("carriers") are subject to prompt payment requirements and interest obligations on overdue claims under statutes and implementing regulations, including C.R.S. § 10-16-106.5, including provisions requiring interest on late payments.

8.      Plaintiff references the NSA and the IDR determinations solely as factual background and evidence of the amounts owed, and seeks relief under applicable state law for Defendant's wrongful retention of funds and unreasonable payment practices, including restitution and interest.

9.      Plaintiff's claims include, among other causes of action, unjust enrichment and related equitable remedies, because Defendant accepted the benefits of Plaintiff's services to Defendant's members while retaining monies that, in equity and good conscience, should be paid to Plaintiff.

3

10.    Plaintiff also asserts state-law claims arising from Defendant's failure to pay amounts due in good faith and within required timeframes, including claims based on breach of contract and/or applicable plan terms (as enforceable by Plaintiff through assignment and/or as an intended beneficiary, where applicable), breach of the implied covenant of good faith and fair dealing, quantum meruit, and statutory prompt pay relief (including interest).

11.    Plaintiff seeks relief scaled to the actual misconduct and harm alleged:

    a.    payment of all unpaid amounts determined to be owed;

    b.    restitution and disgorgement of wrongfully retained funds;

    c.    statutory interest and other amounts mandated by state prompt pay law;

    d.    prejudgment and post-judgment interest;

    e.    reasonable attorneys' fees and costs where authorized; and

    f.    declaratory relief clarifying Defendant's payment obligations under applicable state law.

    g.    Punitive damages for this intentional and flagrant failure to pay Plaintiff money rightfully owed to Plaintiff.

12.    In short, Plaintiff rendered medically necessary care, complied with all required processes, was substantially underpaid by Defendant, obtained determinations confirming the amounts owed, and repeatedly demanded payment. Defendant has intentionally failed to timely remit those amounts, constituting a blatant disregard of its legal obligations under state law.

**PARTIES**

4

13. Noble Elite Telemonitoring Services, LLC is a licensed Medical Provider organized and existing under the laws of Arkansas, with its principal place of business at 4504 Furlong Drive Springdale, AR 72764 ("Plaintiff"). Plaintiff rendered medically necessary healthcare services to individuals enrolled in or covered by health benefit plans issued, administered, and/or otherwise managed by Defendant.

14. At all relevant times, Plaintiff was duly licensed and authorized to provide the healthcare services at issue, and provided such services in the ordinary course of its business and consistent with applicable professional standards.

15. Plaintiff submitted claims and supporting documentation for reimbursement for the services at issue in accordance with applicable plan requirements and Defendant's claims submission procedures, including submission of clean claims where applicable.

16. Upon information and belief, Rocky Mountain Hospital and Medical Service, Inc., d/b/a Anthem Blue Cross and Blue Shield, is a corporation organized and existing under the laws of the State of Colorado, with its headquarters and principal place of business located at 700 Broadway, Denver, Colorado 80203 ("Defendant"). Upon information and belief, Defendant is engaged in the business of issuing, underwriting, administering, managing, and/or paying claims under health benefit plans covering members who received healthcare services from Plaintiff.

17. At all relevant times, Defendant acted directly and/or through its agents, affiliates, contractors, and representatives in processing, evaluating, negotiating, and paying (or failing to pay) the claims, reimbursements, and amounts at issue in this action.

18.     Plaintiff is informed and believes, and based thereon alleges, that Defendant is responsible for the payment obligations at issue, including amounts owed following completion of the NSA open negotiation and IDR processes relating to certain claims, as well as amounts due under applicable state law governing timely payment of claims and interest on overdue payments.

19.     The identities, roles, and responsibilities of additional persons and entities involved in the acts and omissions described herein are currently unknown to Plaintiff and will be added as appropriate upon further investigation and discovery.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to its general jurisdiction and authority to adjudicate civil actions seeking legal and equitable relief, including claims for unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, statutory prompt payment relief (including interest), and declaratory relief.

21.     This Court has subject matter jurisdiction over this action pursuant to the Constitution of the State of Colorado and the Colorado long-arm statute, C.R.S. § 13-1-124.

22.     This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Colorado and maintains its principal place of business at 700 Broadway, Denver, Colorado 80203, in the City and County of Denver.

23.    In the alternative, and independently, this Court has specific personal jurisdiction over Defendant because Defendant purposefully availed itself of the privilege of conducting business in Colorado and the claims asserted herein arise out of or relate to Defendant's Colorado–based conduct, including the administration of health benefit plans, claim handling, payment decisions, and/or the failure to remit payment amounts owed to Plaintiff.

24.    Venue is proper in this Court because Defendant maintains its headquarters and principal place of business at 700 Broadway, Denver, Colorado 80203, in the City and County of Denver, conducts substantial business in this county, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this county, including claim administration, payment decision-making, and the resulting injury.

25.    Venue is also proper because Defendant is subject to service of process in this State and maintains a registered agent for service of process in this State, and because Plaintiff seeks relief under the laws of the State of Colorado, including Colorado's prompt payment statutes C.R.S. § 10-16-106.5, which govern Defendant's claim payment obligations and interest on overdue payments.

26.    Plaintiff reserves the right to amend these allegations as additional jurisdictional and venue facts are confirmed through investigation and discovery, including Defendant's corporate structure, claim administration locations, and the locations where payment decisions were made and implemented.

## FACTUAL BACKGROUND

### Claims Submission, Underpayment, and Nonpayment

7

27.     Plaintiff is a licensed healthcare provider that, in the ordinary course of its practice, renders medically necessary healthcare services to patients, including individuals enrolled in or covered by health benefit plans issued, administered, and/or managed by Defendant.

28.     At all relevant times, Defendant was responsible for administering benefits and processing and paying (or causing to be paid) claims for covered services provided to Defendant's members.

29.     Plaintiff rendered medically necessary services to Defendant's members, and Plaintiff timely submitted claims for reimbursement consistent with applicable plan requirements, Defendant's submission protocols, and applicable law.

30.     Plaintiff submitted clean claims where applicable – i.e., claims submitted with the information reasonably necessary for Defendant to adjudicate the claim and make payment – together with supporting documentation as required by Defendant and/or applicable standards.

31.     Defendant failed to pay certain claims, underpaid certain claims, and/or delayed payment without reasonable justification. In many instances, Defendant issued initial payment determinations that Plaintiff reasonably disputed due to substantial underpayments.

**Open Negotiation and IDR Determinations (Background Context Only)**

32.     For certain out-of-network items and services, the federal No Surprises Act ("NSA") establishes a process that may include an open negotiation period and, where applicable, Independent Dispute Resolution ("IDR").

8

33.    Consistent with that process, Plaintiff engaged in open negotiation with Defendant for applicable claims. When those efforts did not resolve the disputes, Plaintiff initiated IDR for applicable claims, consistent with the procedures established under the NSA and implementing regulations.

34.    Independent dispute resolution entities issued determinations in Plaintiff's favor on multiple occasions (the "IDR Determinations"), identifying reimbursement amounts owed by Defendant for specific claims and dates of service. The IDR Determinations and the amounts stated therein are attached as Exhibit A.

35.    Plaintiff alleges the NSA/IDR history solely as factual background and evidence of the amounts Defendant owes, and to show the unreasonableness of Defendant's continuing nonpayment and delay.

**Defendant's Continued Nonpayment After Determinations and Demand**

36.    Following issuance of the IDR Determinations, Plaintiff provided notice to Defendant and demanded payment of the amounts owed, including by transmitting written demand letters and supporting documentation and by identifying the relevant claim identifiers and IDR determination information.

37.    Despite notice and demand, Defendant failed to remit payment for multiple IDR Determinations, failed to remit payment in full, and/or delayed payment for extended periods without reasonable justification.

38.    Defendant's nonpayment and delays are not isolated administrative errors. Plaintiff has experienced repeated instances of nonpayment and prolonged delay across

9

multiple claims and multiple IDR Determinations, evidencing a pattern of retaining amounts owed while Plaintiff bears the financial burden of delivering care.

### State-Law Timeliness Obligations

39.    Separately and additionally, Defendant failed to timely pay certain clean claims and other amounts due within timeframes required by applicable state law, and is liable for statutory interest and other relief as permitted by that law.

### Harm to Plaintiff

40.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including, without limitation:

      a.   unpaid reimbursement amounts;

      b.   loss of the time value of money;

      c.   increased administrative and collection costs;

      d.   disruption to cash flow and operations; and

      e.   other consequential harms to be proven at trial.

41.    Defendant has been unjustly enriched by failing to pay Plaintiff for services rendered, thereby retaining the benefit of those services – including the discharge of Defendant's obligation to its members to provide or pay for covered healthcare – without providing the compensation due.

### Summary of Amounts Owed

42.    As of the filing of this Complaint, Defendant owes Plaintiff at least **$1,662,417.59** across **90** unpaid IDR Determinations and related claim balances, as reflected in Exhibit A.

10

## CAUSES OF ACTION

### COUNT I – UNJUST ENRICHMENT

43.     Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

44.     Unjust enrichment is an equitable doctrine that prevents a party from retaining a benefit conferred by another where retention without payment would be unjust. Plaintiff alleges (a) Defendant received a benefit from Plaintiff, and (b) Defendant's retention of that benefit without payment is inequitable.

45.     Plaintiff rendered medically necessary healthcare services to individuals covered by health benefit plans issued, administered, and/or managed by Defendant.

46.     In provider–insurer disputes, the relevant "benefit" is not merely the medical services in the abstract, but the discharge of Defendant's obligation to its insured/member to provide, arrange for, or pay for covered healthcare services. By furnishing covered services to Defendant's members, Plaintiff satisfied obligations that Defendant owed under its plans and/or applicable law, thereby conferring a cognizable benefit on Defendant.

47.     Defendant had reasonable notice that Plaintiff expected to be paid for the benefit conferred. Plaintiff submitted claims and/or invoices for the services rendered, and Defendant acknowledged the claims by issuing explanations of benefits ("EOBs") and/or other claim adjudication communications.

48.     Defendant failed to pay certain claims, underpaid certain claims, and/or unreasonably delayed payment, thereby retaining the benefit of Plaintiff's performance without commensurate compensation.

11

49.     For applicable claims, the parties' dispute over the appropriate amount owed was addressed through the NSA open negotiation and IDR processes. Certified IDR entities issued determinations identifying additional amounts owed by Defendant for specific claims, as reflected in Exhibit A.

50.     Plaintiff pleads the IDR history as factual context and valuation evidence. The IDR determinations provide a concrete, non-speculative measure of the value of the benefit Defendant retained after Plaintiff discharged Defendant's obligations by providing covered care.

51.     Despite notice and demand, Defendant failed to remit payment and/or failed to remit payment in full for multiple claims, including claims for which IDR determinations confirmed additional amounts owed, resulting in a direct connection between Plaintiff's impoverishment and Defendant's enrichment.

52.     Defendant's retention of the benefit without payment is unjust and inequitable because Defendant accepted and retained the benefits of Plaintiff's services for Defendant's members while withholding monies that, in equity and good conscience, should be paid to Plaintiff.

53.     As a further result of Defendant's delayed and withheld payments, Defendant has obtained additional financial benefits from retaining funds owed to Plaintiff, including the time-value of money and, to the extent proven, interest, float, or investment-related benefits derived from the retention of amounts due.

54.     Plaintiff is therefore entitled to equitable relief, including restitution of the value of the benefit wrongfully retained, disgorgement of unjust benefits obtained through

12

nonpayment and delay, and such other equitable relief as the Court deems just and proper, together with prejudgment and post-judgment interest as permitted by law.

**COUNT II – QUANTUM MERUIT**

55.    Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

56.    Plaintiff provided medically necessary healthcare services to individuals covered by health benefit plans issued, administered, and/or managed by Defendant.

57.    Plaintiff rendered those services with a reasonable expectation of being paid for the services provided, including payment of the reasonable value of the services and/or amounts otherwise due and owing for the services at issue.

58.    Defendant accepted, utilized, and benefited from Plaintiff's services, including because Plaintiff's services discharged Defendant's obligations to its members to provide, arrange for, and/or pay for covered healthcare services.

59.    Defendant had notice that Plaintiff expected to be compensated for the services rendered, including because Plaintiff submitted claims and/or invoices for payment and Defendant issued explanations of benefits ("EOBs") and/or other claim adjudication communications reflecting Defendant's processing of the claims.

60.    Defendant has failed to pay, has underpaid, and/or has unreasonably delayed payment for the services at issue, including with respect to claims for which the amount owed was confirmed through applicable processes (including the NSA open negotiation and IDR processes).

13

61.     Under the circumstances, it would be unjust and inequitable for Defendant to retain the benefits of Plaintiff's services without paying Plaintiff the reasonable value of those services and/or amounts due.

62.     Plaintiff is entitled to recover, in quantum meruit, the reasonable value of the services rendered to Defendant's members, together with prejudgment and post-judgment interest, and such other relief as may be appropriate.

**COUNT III – VIOLATION OF COLORADO
PROMPT PAY LAW AND REGULATIONS
(C.R.S. § 10-16-106.5)**

63.     Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

64.     Colorado's prompt payment requirements governing healthcare claims arise pursuant to C.R.S. § 10-16-106.5 and related rules and regulations promulgated by the Colorado Division of Insurance (the "Prompt Pay Framework").

65.     At all relevant times, Defendant was a "carrier" and/or acted through an administrator or other delegated claims-processing entity, as those terms are defined and used within the Prompt Pay Framework, and was therefore subject to Colorado's prompt payment requirements with respect to claims for covered healthcare services submitted by Plaintiff.

66.     Plaintiff submitted claims for covered services to Defendant, and those claims were submitted with the information reasonably necessary for Defendant to adjudicate the claims and make payment.

67.    Pursuant to C.R.S. § 10-16-106.5(4), Defendant was required to pay, deny, or settle clean claims within the timeframes required by Colorado law, including:

      a.    within thirty (30) calendar days after receipt by the carrier if the claim was submitted electronically; and

      b.    within forty-five (45) calendar days after receipt by the carrier if the claim was submitted by any other means.

68.    Pursuant to C.R.S. § 10-16-106.5(4)(b), if Defendant contended that resolution of any claim required additional information, Defendant was required, within thirty (30) calendar days after receipt of the claim, to provide a full written explanation of what additional information was needed to resolve the claim.

69.    Absent fraud, claims requiring additional information must be paid, denied, or settled within ninety (90) calendar days after receipt by the carrier once the necessary information has been provided.

70.    Defendant failed to pay, deny, or settle claims submitted by Plaintiff within the timeframes required by C.R.S. § 10-16-106.5 and/or failed to timely remit payment of amounts that became due following adjudication and dispute-resolution processes, including amounts reflected in Exhibit A.

71.    Under C.R.S. § 10-16-106.5(5)(a), Defendant is liable for the covered benefit and must also pay interest at the rate of ten percent (10%) annually on the total amount ultimately allowed on the claim, accruing from the date payment was due.

72.    In addition, under C.R.S. § 10-16-106.5(5)(b), Defendant is liable for a statutory penalty equal to twenty percent (20%) of the total amount ultimately allowed on

the claim where Defendant failed to pay, deny, or settle the claim within ninety (90) days after receipt.

73.    As a direct and proximate result of Defendant's failure to comply with the Prompt Pay Framework, Plaintiff has been damaged, including by being deprived of timely reimbursement, losing the time value of money, and incurring additional administrative and collection costs.

74.    Plaintiff is entitled to recover all relief available under Colorado law, including the covered benefits due, statutory interest, statutory penalties, costs, and such other relief as the Court deems just and proper.

### COUNT IV – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

75.    Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

76.    Plaintiff is entitled to enforce Defendant's payment obligations arising from the parties' payment relationship, including through valid assignments of benefits executed by Defendant's members and/or as an intended third-party beneficiary, as applicable to particular claims.

77.    The parties' contractual payment arrangements constitute contracts governed by Colorado law.

78.    Every contract governed by Colorado law contains an implied covenant of good faith and fair dealing, which requires that neither party act in a manner that destroys or injures the right of the other to receive the fruits of the contract.

16

79. Defendant breached the implied covenant by exercising its claims-processing discretion arbitrarily, unreasonably, and in bad faith, including by:

    a.    Failing to timely and fairly adjudicate covered claims;

    b.    Issuing payment determinations without reasonable basis;

    c.    Engaging in delay tactics designed to avoid or postpone payment;

    d.    Failing to remit payment after amounts owed were determined through applicable processes; and

    e.    Withholding payment despite notice, demand, and confirmation of amounts due.

80. Defendant's conduct lacked a reasonable basis and was undertaken with knowledge or reckless disregard of Plaintiff's contractual rights, thereby depriving Plaintiff of the benefits reasonably expected under the parties' payment relationship.

81. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages including unpaid benefits, consequential losses, administrative costs, and loss of the time value of money.

## COUNT V— INSURANCE BAD FAITH FAILURE TO PAY

82. Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

83. Defendant owed a duty to act in good faith in the handling and payment of claims submitted for services rendered to its members.

84. Defendant lacked a reasonable basis for failing to pay the amounts owed for covered services rendered to its insured members.

17

85. Defendant knew, or recklessly disregarded that it lacked a reasonable basis for its failure to pay.

86. Defendant's conduct was intentional, malicious, or undertaken in reckless disregard of Plaintiff's rights, including by withholding payment after the amount owed was determined through binding dispute-resolution procedures.

87. As a result of Defendant's bad faith conduct, Plaintiff suffered damages including unpaid benefits, consequential losses, and additional financial harm.

88. Plaintiff should be awarded punitive damages as a result of Defendant's flagrant bad faith conduct.

## COUNT V – BREACH OF IMPLIED-IN-FACT CONTRACT

89. Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

90. At all relevant times, Defendant administered payment obligations for members who received medically necessary services from Plaintiff.

91. Through an established and ongoing course of dealing between Plaintiff and Defendant, an implied-in-fact contract arose based upon the parties' conduct and mutual assent, as demonstrated by:

   a. Plaintiff's provision of medically necessary services to Defendant's members with the reasonable expectation of payment;

   b. Plaintiff's submission of claims and required documentation in accordance with Defendant's claims-processing procedures;

   c. Defendant's acceptance, review, and adjudication of those claims;

18

  d. Defendant's issuance of explanations of benefits ("EOBs") and payment determinations identifying allowed amounts and payment responsibility;

  e. Defendant's partial payments on certain claims; and

  f. Defendant's participation in open negotiation and dispute-resolution processes concerning payment amounts.

92. The parties' conduct manifested mutual assent that Plaintiff would furnish services and Defendant would process and pay for those services in accordance with established payment practices and applicable law.

93. The consideration for the implied-in-fact contract consisted of Plaintiff's provision of healthcare services that discharged Defendant's obligations to its members, in exchange for Defendant's agreement to process and remit payment for those services.

94. Plaintiff fully performed its obligations under the implied-in-fact contract by rendering the services at issue and submitting claims and supporting documentation consistent with Defendant's requirements and industry standards.

95. Defendant breached the implied-in-fact contract by failing to honor its payment obligations arising from the parties' course of dealing, including by:

  a. Failing to remit payment, or remitting only partial payment, for services rendered;

  b. Issuing payment determinations inconsistent with Defendant's established payment practices;

19

    c.      Unreasonably delaying payment after receipt of clean claims and/or necessary documentation;

    d.      Failing to remit payment of balances confirmed through dispute-resolution processes for applicable claims (including, where applicable, IDR determinations alleged solely as valuation evidence); and

    e.      Retaining the benefit of Plaintiff's performance without payment as contemplated by the parties' established course of conduct.

96.    Defendant's breaches deprived Plaintiff of the benefit of the parties' implied agreement and caused Plaintiff to suffer damages including unpaid amounts, administrative costs, and loss of the time value of money.

97.    Plaintiff is entitled to recover compensatory damages in an amount to be proven at trial, together with prejudgment and post-judgment interest and such other relief as the Court deems just and proper.

**COUNT VI – DECLARATORY JUDGMENT**
**(C.R.S. §§ 13-51-105, 13-51-106)**

98.    Plaintiff repeats and realleges each and every allegation contained in the preceding sections of this Complaint as if fully set forth herein.

99.    An actual, justiciable controversy exists between Plaintiff and Defendant concerning Defendant's payment obligations for the claims at issue, including:

    a.      whether Defendant is obligated to remit payment for amounts due on claims submitted by Plaintiff;

20

b.    whether Defendant is obligated to remit payment of unpaid balances reflected in the IDR Determinations; and

c.    whether Defendant is obligated to pay statutory interest and related relief under applicable Colorado's prompt payment law and regulations.

100.   Pursuant to C.R.S. § 13-51-106, any person whose rights, status, or other legal relations are affected by a statute, contract, or other written instrument may obtain a declaration of rights or legal relations thereunder. Plaintiff's rights and legal relations are directly affected by Defendant's obligations under applicable Colorado law and the health benefit plans at issue.

101.   Pursuant to C.R.S. § 13-51-105, this Court has the power to declare the rights, status, and other legal relations of the parties, and such declaration shall have the force and effect of a final judgment.

102.   Plaintiff seeks a declaration that Defendant is obligated to timely pay the amounts due for the services rendered and claims submitted by Plaintiff, including amounts identified as owed in Exhibit A, and that Defendant's continued nonpayment and delay are inconsistent with Defendant's obligations under applicable law.

103.   Plaintiff further seeks a declaration that, to the extent the claims at issue constitute "clean claims" and/or otherwise fall within Colorado's prompt payment requirements, Defendant is obligated to pay such claims within the timeframes required by Colorado law and regulations and to pay interest and other relief on overdue payments as permitted by law.

104.    A declaratory judgment will serve a useful purpose in clarifying and settling the parties' legal relations and will terminate, or afford relief from, the uncertainty, insecurity, and controversy giving rise to this proceeding.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant, and award the following relief:

1.  An award of damages and/or payment in an amount to be proven at trial, including payment of all amounts due and owing on the claims at issue, including unpaid balances reflected in Exhibit A;

2.  Restitution and disgorgement of all benefits wrongfully retained by Defendant, including the value of the benefit conferred and retained without payment and, to the extent proven, benefits derived from delay (including float/time-value benefits);

3.  Statutory interest and penalties available under Colorado prompt payment law, including but not limited to C.R.S. § 10-16-106.5, including interest at the statutory rate and the statutory twenty percent (20%) penalty for claims not timely paid, denied, or settled;

4.  Declaratory relief pursuant to the Colorado Uniform Declaratory Judgments Act, C.R.S. §§ 13-51-105 and 13-51-106, declaring the rights and obligations of the parties, including Defendant's obligation to remit payment for the claims at issue and to comply with Colorado prompt payment requirements;

5.  Prejudgment interest and post-judgment interest as permitted by law;

22

6.  Costs of suit, and attorneys' fees to the extent recoverable by contract, statute, regulation, or other applicable law;

7.  Punitive damages to reflect the intentional and flagrant disregard of state law, including violations of insurance bad faith laws; and

8.  Such other and further legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: April 3, 2026

CALLAGY LAW, PC
Attorney for Plaintiff

By: /s/Brian Williamson
Brian Williamson, Esq.

23

# EXHIBIT A-2

Delay Reduction Order

| | |
|---|---|
| DISTRICT COURT, CITY & COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202<br>(303) 606-2300 | DATE FILED<br>April 9, 2026 4:11 PM<br>CASE NUMBER: 2026CV31212 |
| Plaintiff(s):   NOBLE ELITE TELEMONITORING SERVICES, LLC<br><br>v.<br><br>Defendant(s):   ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC. d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD | ▲   **COURT USE ONLY**   ▲ |
| | Case Number:   26CV31212<br><br>Courtroom: 414 |
| **DELAY REDUCTION ORDER** | |

All civil courtrooms are on a delay reduction docket. **If an attorney or a pro se party fails to comply with this Order, the Court may dismiss the case without prejudice**. This Order is the initial notice required by C.R.C.P. 41(b)(2) and C.R.C.P. 121 § 1-10 prior to dismissal for failure to prosecute.

In all civil actions, the following deadlines must be met:

1. **Service of Process:** Proof of service of process under C.R.C.P. 4 for all defendants must be filed within **63 days** after the date of filing of the complaint. After **63 days**, the action may be dismissed by the Court against any defendant for whom proof of service has not been filed.

2. **Default:**

   a. Application for entry of **clerk's default under C.R.C.P. 55(a)** must be filed within **14 days** after default has occurred.

   b. Motions for entry of **default judgment under C.R.C.P. 55(b) shall not** be combined with applications for entry of clerk's default under C.R.C.P. 55(a).

   c. **Motions for entry of default judgment must comply with C.R.C.P. 121 § 1-14**. Motions must also include a Certificate of Mailing to all parties against whom default judgment is sought. Reasonable inquiry regarding a person's military status requires confirmation through the Department of Defense's Servicemembers Civil Relief Act website (https://scra.dmdc.osd.mil) or equivalent confirmation.

1

3. **Trial Setting:** The Responsible Attorney, as defined in C.R.C.P. 16(b)(2), must file and serve a Notice to Set the case for trial and must complete the setting of the trial no later than **14 days** from the date the case is at issue. (**Note: this is a shorter timeframe than the default deadline in C.R.C.P. 16.1(g)**.)  A case is "at issue" when: (a) all parties have been served and (i) filed a responsive pleading, C.R.C.P. 7, or (ii) a clerk's default has entered, or (b) at such other time as the Court may direct.

4. **Cases filed under C.R.C.P. 16:**

   a. **Case Management Conference**: The notice to set trial must also include a notice to set a Case Management Conference as required by C.R.C.P. 16(d)(1), to be held no later than **49 days** after the case is at issue.

   b. **Proposed Case Management Order:** At least **7 days** before the Case Management Conference, the parties must file, in editable format, a proposed Case Management Order that includes all matters set forth in C.R.C.P. 16(b)(1)-(17) and take all necessary actions to comply with those subsections.

   c. **Waiver of Case Management Conference:**   If all parties are represented by counsel, a joint request to waive the case management conference may be included in the proposed Case Management Order. Unless such a request has been granted, counsel should plan on appearing for the case management conference. Case Management Conferences are required in all cases in which one or more parties is proceeding pro se.

5. **Cases filed under C.R.C.P. 16.1:**

   a. **Certificate of Compliance:** Not later than **49 days** after the case is at issue, the Plaintiff or the Responsible Attorney must file a Certificate of Compliance as required under C.R.C.P. 16.1(h). No Case Management Order or Case Management Conference is required, unless one or more parties is pro se.

In all civil actions, the following provisions apply:

1. **Service of this Order:** The Plaintiff, or if the Plaintiff is *pro se* then the Responsible Attorney, must send a copy of this Order, and any other Orders issued as of the date of this Order, to all other parties who enter appearances in this case.

2. **Related Cases:** Any party appearing in this case who is aware of a related case, as defined by C.R.C.P. 121, § 1-9(2), shall file a notice of related cases, *see* C.R.C.P. 121, § 1-9.

3. If any party or witness will require an interpreter, please notify the Courtroom Clerk as soon as possible in advance of the date of the proceeding at which interpreter services will be required. If interpreter services will be required at trial, the parties should so-notify the Court in their proposed case management order, and, in any event, provide notice not later than 91days before trial.

DATED: April 9, 2026           BY THE COURT:

_____

Ian J. Kellogg
District Court Judge

4

# EXHIBIT A-3

Pre-Trial Order



DISTRICT COURT, CITY & COUNTY OF DENVER,
STATE OF COLORADO
1437 Bannock Street
Denver, Colorado 80202
(303) 606-2300

DATE FILED
April 9, 2026 4:12 PM
CASE NUMBER: 2026CV31212

Plaintiff(s): NOBLE ELITE TELEMONITORING SERVICES, LLC

v.

Defendant(s): ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC. d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD

▲ **COURT USE ONLY** ▲

Case Number:   26CV31212

Courtroom: 414

**PRETRIAL ORDER**

Counsel and all unrepresented parties are expected to read, be familiar with, and follow this Pretrial Order. If you do not comply with this Order, you may face adverse consequences including, but not limited to, the striking of any non-compliant or untimely filings, preclusion from the presentation of evidence, and dismissal without prejudice.

Plaintiff's counsel or a Plaintiff proceeding *pro se* shall serve copies of this Order on all Defendants who have not yet appeared and all future counsel/parties in this case and file a certificate of compliance with this requirement **within seven days of service**.[1]

**A. Cases With *Pro Se* (Unrepresented) Parties**

1. Parties appearing without counsel—*pro se* parties—are directed to contact Colorado Legal Services / Metro Volunteer Lawyers, 1905 Sherman Street, Suite 400, Denver, Colorado, 80203, (303) 837-1313 to determine whether they qualify for free or reduced-cost legal representation.

2. Pro se parties are responsible for knowing and complying with the Colorado Rules of Civil Procedure (C.R.C.P.), this Order, and any other Orders issued by the Court in this case.

3. This Division requires Case Management Conferences in all cases in which

---

[1] For the parties' convenience and for ease of reference, the deadlines included in this Pretrial Order are set forth in table form at the end of the Order.

one or more parties is proceeding *pro se*, including cases under C.R.C.P. 16.1. In *pro se* cases, the Responsible Attorney, as defined in C.R.C.P. 16(b)(2), shall notice the case for a Case Management Conference.

**B. Trial Settings**

1. Once the case is "at issue," the Responsible Attorney has 14 days to file and serve a Notice to Set and finish setting the case for trial. A case is "at issue" when: (a) all parties have been served and (i) filed a responsive pleading, C.R.C.P. 7, or (ii) a clerk's default has entered; or (b) at such other time as the Court may direct.

2. The Court is available for trial settings **Tuesday through Thursday, from 10:00 a.m. to 12:00 p.m.** Trial dates may be obtained by email, 02Courtroom414@judicial.state.co.us, or telephone, (303) 606-2429. Your Notice to Set must include the date, time, and manner you will contact the Court.

3. Your Notice to Set should be filed **at least 48 hours before the date/time in your notice**, which is the date/time you should contact the Court. Your Notice to Set must include how many trial days are needed and whether trial will be to a jury or to the Court. Do not file a Notice of Trial until the Courtroom Clerk has confirmed your trial dates following trial setting.

4. Most cases should be tried **in five days or less**, including time for jury deliberation.

5. Any party requesting a trial date **more than one year after the date of filing**, or requesting a trial of **more than five days**, should be prepared to attend an in-person Case Management Conference to discuss why more time is necessary and appropriate.

6. To the greatest extent practicable, the parties should notify the Court at the time of trial setting whether interpreter services will be needed at trial or other proceedings in the case.

**C. Case Management Conference and Case Management Order**

1. The Notice to Set Trial should also include a Notice to Set a Case Management Conference. Case Management Conferences need not be included in the Notice to Set only in the limited instance of cases under C.R.C.P. 16.1 where all parties are represented by counsel.

2. The Case Management Conference must be held **within 49 days after the case is at issue**.

2

3. Unless otherwise ordered, lead  counsel and unrepresented  parties,  if any, shall attend the case management conference in person or via Webex. The parties shall inform the Court at the time of setting whether they intend to appear in-person or by Webex and shall so-state in the Proposed Case Management Order.

4. All parties shall participate, in good faith, in preparing the Proposed Case Management Order pursuant to C.R.C.P. 16(b).  To the extent that any party does not so participate, those circumstances shall be explained in the Proposed Case Management Order.

5. At the conference, parties and counsel shall be prepared to discuss the proposed order, issues requiring resolution, and any special circumstances of the case.

6. If all parties are represented by counsel, counsel may jointly request the Court to dispense with a case management conference pursuant to C.R.C.P. 16(d)(3). However, unless and until such a request has been granted, counsel and any unrepresented parties should plan on appearing for the Case Management Conference. A Case Management Conference will be waived only if the Parties agree on, and the Court approves, the Case Management Order.

7. This Division requires Case Management Conferences in all cases in which one or more parties are proceeding *pro se*.

8. If parties are both represented, are proceeding under Rule 16.1 Simplified Procedure, and do not require a Case Management Order, they must file the certificate required by Rule 16.1(h) so that the Court knows that the parties have complied with their initial disclosure and case management obligations.

9. Parties who have opted out of simplified civil procedure under C.R.C.P. 16.1 by filing a certification of the value of the case must include in the Case Management Order "a description of the categories of damages sought and a computation of any category of economic damages claimed."

10. If any party or witness requires an interpreter which the Court is required to provide under C.J.D. 06-03 (as amended, March 2023), the parties shall include a statement in their Proposed Case Management Order notifying the Court of the need for an interpreter, the language(s) needed, and the anticipated case-related proceedings and dates at which such interpreters' services may be required.

**D. Duty to Confer**

1. The Court takes the duty to confer seriously. The Court expects good-faith compliance with C.R.C.P. 121, §§ 1-12(1), 1-12(5), and 1-15(8).

2. The duty to confer applies to all motions, unless a rule or statute provides that conferral is not required.

3

3. The parties must initiate conferral efforts sufficiently in advance of any filing deadline or anticipated filing date to enable genuine, two-way communication. Certification that a telephone call, e-mail, or text was directed to opposing counsel 24 hours (or less) before the pleading was filed and that no response was received is not a good faith effort.

4. If attempts to confer are unsuccessful, the certification must describe the attempts in detail.

5. Pleadings that do not, on their face, demonstrate to the Court's satisfaction that the parties engaged in good-faith, pre-filing conferral, as required by C.R.C.P. 121 and this Order, may be stricken.

**E. Discovery and Discovery Disputes**

Discovery is a litigation tool whose sole purpose is to elicit relevant facts to get to the truth of the matters in dispute. The use of discovery for any other purpose—such as to hinder or obstruct discovery of the truth, to harass, to embarrass, to delay, to increase the cost of litigation, or to exert settlement pressure—is not permitted.

1. **Written discovery**

   a. Consistent with the purpose of discovery and C.R.C.P. 26(b)(1), written discovery requests are limited to seeking nonprivileged information that is relevant to any party's claims or defenses and is proportional to the needs of the case.

   b. **Responses to written discovery requests**

      i. Responses to written discovery must fully and fairly respond with all non-privileged information that is responsive to the request.

      ii. **<u>Do not use boilerplate objections</u>**, such as "overly broad, unduly burdensome, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence," or the like. If you interpose boilerplate objections, you must include a clear and precise explanation of the legal and factual justification for raising such an objection.

      iii. Responses to requests for production must comply with C.R.C.P. 34(b): "An objection **<u>must state</u>** whether any responsive materials are being withheld on the basis of that objection."

2. **Disputes concerning written discovery**

4

a. If a dispute arises concerning the responses to written discovery, the Court expects the parties to confer in good faith in an effort to resolve the dispute.

b. If the parties are unable to resolve their dispute, they must **jointly** prepare and file a discovery dispute chart in the form below:

| Discovery Request | Response/Objection | Issue | Response/Justification |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

c. The parties shall attach to their discovery dispute chart the relevant portions—and only the relevant portions—of the disputed discovery request(s) and response(s)/objections. This would normally include the cover page and the page(s) with the request(s) or response(s) in dispute. Pages with general objections should not be included unless they are part of the dispute.

d. The statements of the would-be movant's concern and the would-be respondent's response/justification should be no more than three sentences, including the citation of any relevant authority.

e. Upon receipt of a discovery dispute chart that complies with this Order, the Court will either resolve the issue, direct the parties to set an in-person discovery conference, or request formal briefing. **Absent a directive from the Court, no written discovery motions will be accepted.** Any discovery motions filed without leave of Court may be stricken.

3. **Depositions**

a. Counsel shall adhere strictly to C.R.C.P. 30(d)(1) and (3). No objections may be made during depositions except those (i) that would be waived if not made under C.R.C.P. 32(d)(3)(B) (errors and irregularities), (ii) necessary to assert a recognized privilege, (iii) to enforce a limitation on evidence directed by the Court, or (iv) to present a C.R.C.P. 30(d)(3) motion (to terminate a bad faith deposition). Objections to form shall be limited to "objection as to form." Any further explanation is prohibited unless specifically requested by the attorney conducting the deposition.

b. **No speaking objections**. Making an objection or a statement that has the effect of coaching the deponent or suggesting an answer constitutes abusive deposition conduct and is prohibited. It is inappropriate and prohibited for a defending attorney to advise a witness, during the deposition, to answer "if you know," or "if you remember." It is similarly prohibited for a defending attorney to advise a witness not to speculate.

c. If a discovery dispute arises involving a deposition that the parties are unable to resolve through good-faith conferral, the parties shall jointly place a call to

5

the Court's clerk to inform the Court that the parties have a dispute about taking a deposition or about deposition conduct. The Court will use its best efforts to resolve the deposition-related dispute in a timely fashion.

d. If the Court determines that a party or counsel unreasonably has interrupted, delayed, or prolonged a deposition, whether by excessive questioning, objecting, or other conduct, that party, its counsel, or both may be ordered to pay the other party's (or parties') expenses, including without limitation, reasonably necessary travel, lodging, reporter's fees, attorneys' fees, and videotaping expenses, for that portion of the deposition at which the Court determines misconduct has occurred. In addition, that party, its counsel, or both may be required to pay all such costs and expenses for any additional depositions or hearings made necessary by its misconduct.

4. **All other discovery disputes**. If you are unable to resolve the dispute through good-faith conferral, contact Courtroom 414 to notify the Court that the parties have a dispute and the nature of the dispute. The Court will then set the matter for a discovery-dispute hearing or order written submissions. Do not file written discovery motions unless requested to do so by the Court. Any discovery motions filed without leave of Court may be stricken.

## F. Motions and Other Written Submissions

1. **All papers filed with the Court**

   a. Any attorney or pro se party who signs a written submission filed with the Court is responsible for the writing's contents. If Chat GPT or other artificial intelligence is used to generate any portion of any writing filed with the Court, the signing party must verify its contents.

   b. The requirements of C.R.C.P. 121 § 1-15 concerning the content and length of briefs will be strictly enforced.

   c. Motions should include a recitation of authority. Citations to unpublished opinions should use a Westlaw reference; the Court does not have access to LEXIS.

   d. Do not combine motions or incorporate your own motions into a response or reply.

   e. When e-filing exhibits, parties should describe the exhibit in the title field for the exhibit so that the exhibit description appears in the Court's register of actions (e.g., Ex. 1, Smith Decl., Ex. 2. Sales Contract). Deposition excerpts should be highlighted. Do not file entire deposition transcripts as exhibits.

2. **Motions for Leave to Amend.** Any party, other than a pro se prisoner, that files

6

an opposed motion for leave to amend or supplement a pleading must attach as an exhibit to the motion (a) a copy of the proposed amended pleading, and (b) a copy of the proposed amended pleading that identifies the proposed amendments by striking through (~~striking through~~) the text to be deleted and underlining (<u>underlining</u>) the text to be added.

3. **Motions to Dismiss.** Absent prior permission from the Court, parties are limited to filing a single motion to dismiss that raises all arguments under Rule 12(b).

4. **Motions for Summary Judgment**

   a. Absent prior permission from the Court, parties are limited to filing a single motion for summary judgment.

   b. All motions for summary judgment must be filed **at least 91 days before trial**.

   c. Motions for summary judgment should follow the format below:

      i. The motion shall include a section titled "Statement Undisputed Material Facts," setting forth in simple, declarative sentences, separately numbered and paragraphed, each material fact that the movant believes is not in dispute and that supports the movant's claim that it is entitled to judgment as a matter of law. The movant should cite to a specific portion of a specific document (or photograph, video, or other material) in the record that establishes each fact. General references to pleadings, depositions, or documents are insufficient if the cited document is more than one page long.

      ii. Any opposition to a motion for summary judgment shall include a section titled "Response to Statement of Undisputed Material Facts." This section shall use the same numbering as the motion and shall admit or deny each of the movant's "facts." Any denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial.

      iii. Any reply shall include a section entitled "Reply Concerning Statement of Undisputed Material Facts." Following the same numbering system, the movant shall address the Response to Statement of Undisputed Material Facts, and, for any fact that the nonmovant denies is undisputed (or material), either a) admit that the fact is disputed or b) supply a brief explanation for the movant's position that the fact is undisputed, accompanied by a specific reference to material in the record establishing the fact is undisputed.

         iv.   In any admission or denial, the party must admit or deny the factual substance of the other party's assertion, unless doing so would violate a recognized privilege.

5. **Motions for Determination of a Question of Law**

    a.   Absent prior permission from the Court, parties are limited to filing a single motion for determination of a question of law.

    b.   All motions for determination of a question of law must be filed **at least 91 days before trial**.

6. **Motions in Limine**

    a.   Motions in limine must be filed **at least 35 days before trial** unless a different time is permitted by Court order, and any responses **must be filed seven days later (at least 28 days before trial)**.

    b.   **Each party may file only one, omnibus motion in limine, which is subject to the page limits in Rule 121, § 1-15. No replies are permitted on motions in limine**.

    c.   Motions in limine are to resolve the admissibility of particular points of evidence. They should not be used to resolve dispositive issues or challenge the substance of expert testimony. The Court will rarely entertain relevance objections in limine, as it is usually not possible to rule on such objections in an evidentiary vacuum.

7. **Expert Challenges.** Motions challenging expert testimony pursuant to C.R.E. 702 must be filed **at least 70 days before trial**, responses must be filed within 21 days (and at least 49 days before trial), and replies must be filed within 7 days of any response (and at least 42 days before trial. The Court will determine whether a hearing is necessary.

8. **All Other Pretrial Motions.** Other pretrial motions must be filed **at least 35 days before trial** unless otherwise ordered by the Court.

9. **Forthwith Motions.** Forthwith motions are discouraged. If an expedited ruling is desired, the moving party must specifically request an expedited schedule in the original motion and the moving party must contact the Courtroom Clerk to advise of this request. Your emergency, however, may not be the Court's emergency. Unless otherwise ordered, the briefing schedule for all motions will follow C.R.C.P. 121 § 1-15(b), (c).

  **G. Extensions and Continuances**

1.  **Extensions of Discovery Deadlines.** Other than expert-related discovery, stipulated agreements to extend the dates for serving disclosures, discovery responses or objections, or the discovery cutoff do not need to be filed with the Court.

2.  **Extensions on Expert Disclosures, Summary Judgment Motions, C.R.E. 702 Motions, Motions in Limine, and other Motions Close to Trial.** The Court will approve extensions on these deadlines sparingly, if at all. Extensions of time close to trial do not permit the Court sufficient time to rule in advance of trial. Parties should plan their discovery and motions practice accordingly.

3.  **Motions to Continue Trial.** Motions to continue trial dates, even if stipulated, will not be granted as a matter of course, and will only be granted for good cause shown.

## H. Trial Management Order and Trial Management Conference

1.  The Trial Management Order (TMO) must be filed **at least 28 days before trial**. The TMO must comply strictly with C.R.C.P. 16, including the requirement that witness and exhibit lists be attached to the TMO. All parties must participate in the preparation of the TMO.
2.  When the Court has multiple trials to be tried on a particular date, the presence and timeliness of a TMO is one criterion used to determine priority.

3.  After the parties have filed the TMO, they should contact the Courtroom Clerk at (303) 606-2429 to set a Trial Management Conference. The Trial Management Conference will be held **at least seven days before trial**.

4.  The Court expects lead counsel to attend the Trial Management Conference.

## I. Settlement

1.  Mediation or another form of alternative dispute resolution ("ADR") is required in all cases. Unless otherwise ordered by the Court, the parties must participate in mediation/ADR **at least 91 days before trial** and the Responsible Attorney must file a status report **at least 90 days before trial** confirming that the parties participated in mediation/ADR and advising the Court as to the outcome.

2.  The parties shall notify the Court **within 24 hours of settlement or resolution** of their case.

9

**J. Interpreters.** In the event that the need for an interpreter has not already been communicated to the Court in accordance with Sections B or C, above, any party or witness that requires an interpreter which the Court is required to provide under C.J.D. 06-03 (as amended, March 2023), must notify the Courtroom Clerk of same, including the language(s) needed and the date(s) of the proceedings for which such services are required, **at least 91 days before the proceeding at which interpreter services are needed**. Failure to do so may result in the Court's inability to schedule an interpreter and, if so, the witness will not be permitted to testify.

**K. Pretrial procedures**

    1.    **Exhibits and Exhibit Lists**

        a.    The parties shall exchange copies of their proposed exhibits, including demonstrative exhibits, **at least 21 days before trial**.

        b.    In addition to the requirements of C.R.C.P. 16(f), the parties shall confer and submit a single, **joint exhibit list** that includes all exhibits—by number and description—that all parties intend to offer into evidence at trial. The Court strongly encourages the parties to number exhibits consecutively and to include any duplicative exhibits only once. The parties **must** confer concerning the authenticity and admissibility of every exhibit and shall stipulate to same absent a good-faith objection. The joint exhibit list must include the following column headers: Exhibit No., Description, Stip. authenticity, Stip. admissibility, Offered, and Received. The joint exhibit list shall be electronically filed and emailed to the Court's division staff at 02courtroom414@judicial.state.co.us **at least seven days before trial**.

        c.    Counsel must confer and coordinate the creation of at least four complete sets of the exhibits reflected in the parties' joint exhibit list, including one for each party, one for the Court, and one for the witness stand (which will be the official copy that goes to the jury).

    2.    **Witness List.** In addition to the requirements of C.R.C.P. 16(f), the parties shall confer and submit a single, **joint witness list** that includes all witnesses—by name and, if appropriate, title (e.g., Dr. Sarah Murray, M.D., Best Hospital), but no other identifying information—whom the parties will or may call at trial. The joint witness list shall be in addition to any prior designation of witnesses and will be the list from which the Court can read to the jury prior to trial. The joint witness list shall be electronically filed and emailed to the Court's division staff at 02courtroom414@judicial.state.co.us **at least seven days before trial**.

3. **Stipulated Facts.** The parties shall stipulate to material facts about which there is no good-faith dispute and shall **jointly** prepare a list of **stipulated facts**, which shall be electronically filed and emailed to the Court's division staff at 02courtroom414@judicial.state.co.us **at least seven days before trial**.

4. **Order of Proof.** Parties must confer and prepare a **joint order of proof** that includes a good faith estimate of the order in which witnesses will be presented and the time for direct, cross, and re-direct examination of each witness. The cumulative time for witness examination may not exceed the time allocated for the trial; the total time allocation must also account for the time necessary for jury selection, opening statements, regularly scheduled breaks, and closing arguments. The Court reserves the right to enforce the time estimates stated in the order of proof. The order of proof shall be electronically filed and emailed to the Court's division staff at 02courtroom414@judicial.state.co.us **at least seven days before trial**.

5. **Depositions.** Showing of videotaped depositions or reading depositions in lieu of live testimony is strongly discouraged. C.R.C.P. 16(f)(3)(VI)(D) sets the schedule for designating deposition testimony. Objections to deposition testimony must be made **at least three days prior to trial** and must cite page, line, and the specific evidentiary grounds supporting the objection. In all other respects, C.R.C.P. 16(f)(3)(VI)(D) must be complied with, including providing a copy of the deposition, with the proposed testimony highlighted, to the Court **at least three days prior to trial**. The same rules apply to both videotaped and transcribed depositions. When applicable, a party is required to provide someone to read the testimony.

6. **Special Equipment.** The parties must be prepared to provide all audio-visual equipment they wish to use and must arrange to test such equipment prior to trial. Trial will not be delayed for any technical difficulties arising from the parties' use of their own AV equipment or other technology.

7. **Trial Briefs.** Trial briefs may be filed **at least seven days before trial**. No responses or replies are permitted. Trial briefs are discouraged unless they address specific legal or evidentiary issues. Trial briefs should be concise, should not repeat previously filed arguments, and may be no longer than ten pages.

8. **Jury Instructions**

11

a.  Parties must meaningfully confer on jury instructions, including a 2:1 Statement of the Case, and a proposed verdict form.

b.  Counsel for the first party to demand a jury (and whose demand has not been withdrawn) shall file such stipulated jury instructions and verdict forms **at least seven days before trial**. There is no need to cite legal authority on any stipulated jury instructions or verdict form.

c.  **Disputed Jury Instructions and Verdict Forms.** Counsel for any party who requests a jury instruction or verdict form as to which there is no agreement shall, **at least seven days before trial**, file such disputed instructions and forms, together with a citation to the CJI or other authority on which each is based.

d.  All stipulated or disputed jury instruction should also be emailed to the Division at 02courtroom414@judicial.state.co.us **at least seven days before trial**.

e.  **Jury Instruction Conference.** The Court and parties will work on jury instructions at least one evening during trial. Once the final instructions are assembled, the Court will allow parties to make a record of their objections and to tender any additional proposed instructions.

## L. Courtroom Procedures for All Proceedings

1.  **Respect and Civility**

    a.  The Court expects counsel and all unrepresented parties that appear in Courtroom 414 to treat each other, witnesses, jurors (prospective and actual), the Court, and Court staff with respect and civility.

    b.  Consistent with Colorado Rule of Professional Conduct 8.4(g), it is professional misconduct for a lawyer to "engage in conduct, in the representation of a client, that exhibits or is intended to appeal to or engender bias against a person on account of that person's race, sex, gender identity or expression, sexual orientation, religion, national origin, ethnicity, disability, age, or socioeconomic status, whether that conduct is directed to other counsel, court personnel, witnesses, parties, judges, judicial officers, or any persons involved in the legal process."

    c.  Counsel and parties will refer to each other and witnesses by appropriate courtesy titles plus last names—e.g., Counselor Smith, Witness Thomas. Mr. Smith, Ms. Thomas, Mx. Underhill, or the like, may also be used, in accordance with the addressee's preferred title/honorific.

2.  **Presentation and Questioning Witnesses.** All presentations and questioning must be done from the podium, unless permission is granted to speak from

counsel table or to approach the witness or the bench. The FTR recording system in Courtroom 414 works best when all counsel and witnesses speak directly into the provided microphones; wander away from the microphones at your own risk to a complete and accurate record of proceedings, including for appellate review. *See also infra* § L.4.

3.    **Objections**

    a.    Be professional, concise, and specific.

    b.    Speaking objections are not permitted.

    c.    Do not automatically respond to an objection; if the Court wants a response to an objection before ruling on it, the Court will ask for one.

4.    **Use of Freelance Court Reporters.** The parties may agree to retain a freelance court reporter for trial in accordance with C.J.D. 05-03 (as amended June 2021). If a court reporter is used, they will be used for the entire trial. Unless good cause is shown, the Court asks the parties to waive the reporting of the reading of jury instructions. The court reporter will not be required to wait during deliberations, jury questions or the final reading of the verdict; for those matters, the electronic recording device will be used.

**M. Trial Procedures**

1.    **Scheduling/Use of Time at Trial**

    a.    The trial day will start at 8:30 a.m. and end at 5:00 p.m. There will be a morning and an afternoon break of 10 to 15 minutes each. Lunch will run from approximately noon to 1:00 p.m.

    b.    Counsel and parties will be in court by 8:00 a.m. on the first day of trial, and 8:15 a.m. each morning thereafter, so that the parties may discuss any outstanding issues before the trial day begins.

    c.    Counsel are responsible for having witnesses scheduled so as to prevent any delay in the presentation of testimony or running out of witnesses before 5:00 p.m. on any trial day. There must be no more than a five minute delay between witnesses. If there is, the Court may deem the delaying party to have rested, and require any non-delaying party to commence its case in chief.

2.    **Juror Notebooks.** Each trial juror will be provided with a juror notebook (a 1-inch binder) by the Court.

3.    **Juror Exhibits.** At the Trial Management Conference, the parties should be prepared to discuss whether exhibits will be provided to the jurors. If the Court

13

permits exhibits to be provided to jurors, each party must provide a sufficient number of copies of for the jury and any alternates, three-hole punched in advance. The Court will only permit stipulated and non-voluminous exhibits to be provided to the jury.

4. **Jury Selection**

   a. The Court will ask general *voir dire* questions, covering basic background information and qualifications of jurors, before counsel's *voir dire*.

   b. If a party would like the Court to ask a particular question (because, for example, the issue is sensitive and it would be easier to address if asked by the Court), the party may electronically file that request **at least seven days before trial**.

   c. Each side will have a maximum of 20 minutes for *voir dire*, unless additional time is requested and permitted at the Trial Management Conference. In multi-party cases, time must be divided between all parties on one side of the case.

   d. *Voir dire* will be conducted from the podium.

   e. No argumentative questions may be asked during *voir dire.*

   f. One or two alternate jurors may be seated. The alternate(s) will be the juror with the highest number assigned by the jury commissioner. Parties must confer on whether they agree that the alternate may deliberate and inform the Court of their agreement the first morning of trial. The Court prefers that all jurors be given the opportunity to deliberate.

5. **Opening Statements for Jury Trials.** Unless otherwise ordered, each side will have 20 minutes for opening statements.

6. **Juror Questions.** Juror questions will be permitted when all other questions have been asked of a particular witness. If the Court asks any juror questions, counsel may ask brief follow-up questions, but only as to issues raised by the jurors' questions.

7. **Daily Conferences.** At the end of each trial day, after the jury is excused, I will conduct a brief conference. We will discuss whether the case is on schedule, and, if not, whether any adjustments must be made to get it back on schedule. Counsel shall also announce at each daily scheduling conference the witnesses for the following day, in the order of their appearance.

8. **Master Exhibit Binder.** After the presentation of evidence, the parties shall confer and prepare one "master" exhibit binder, utilizing the exhibit binder(s) from the witness stand, that includes one copy of every admitted exhibit from

14

trial, with any exhibits that were not introduced and admitted removed. The master binder must be prepared prior to closing arguments. This binder will be given to the jury before they begin deliberations. The exhibits should follow the numbering system in the parties' joint exhibit list.

9.      **Closing Arguments.** The Court typically sets the time allotted for closing arguments during the course of trial.

10.     **Uploading Exhibits Post-Trial.** The Court cannot maintain custody of exhibits at the conclusion of a trial or hearing. However, there must be a record of all exhibits offered and/or received in evidence. Accordingly:

a.      Electronic versions of all exhibits admitted into evidence and all exhibits offered but rejected must be electronically filed by the party which marked the exhibit **within seven days** of the conclusion of the trial. Uploaded exhibits that were admitted into evidence must be in exactly the form they were in at the conclusion of the evidence, including any markings, notations, etc., added to the exhibit by any witness.

b.      Each party will maintain in its custody any withdrawn exhibits and/or depositions, without modification of any kind, **until 63 days after the time for the need of such exhibits for appellate or other review purposes has expired**, unless all parties stipulate otherwise on the record or in writing. It will be the responsibility of the withdrawing parties to determine when the appropriate time period has expired.

\* \* \*

The Court understands that the practice of law can be stressful. We are here to help, and we look forward to working with you to ensure that the parties have a full and fair opportunity to present their case, with a minimum of unnecessary stress. If you have any questions, please contact Courtroom 414 at (303) 606-2429 or 02Courtroom414@judicial.state.co.us.

DATED: April 9, 2026

Judge Ian Kellogg
Denver District Court

15

# Overview of Pretrial Order Deadlines

| Event / Filing Requirement | Deadline | Relative to |
|---|---|---|
| Serve this Order on all Defendants and file certificate of compliance | Within 7 days | Service of the Order |
| File & serve Notice to Set the case for trial | Within 14 days | Case is "at issue" |
| File Notice to Set | At least 48 hours | Before requested setting date |
| File Proposed Case Management Order | At least 7 days | Before Case Management Conference |
| Hold Case Management Conference | Within 49 days | Case is "at issue" |
| Try the case | Within 1 year | Date of filing |
| File motion for summary judgment | At least 91 days | Before trial |
| Participate in mediation/ADR | At least 91 days | Before trial |
| File ADR status report | At least 90 days | Before trial |
| Notify need for an interpreter | At least 91 days | Before hearing/trial |
| File motion challenging expert testimony (C.R.E. 702) | At least 70 days | Before trial |
| File responses to expert-challenge motions | At least 49 days | Before trial |
| File replies in expert-challenge motions | At least 42 days | Before trial |
| File Motions in Limine | At least 35 days | Before trial |
| File responses to Motions in Limine | 7 days later (at least 28 days before trial) | After Motions in Limine are filed |
| File all other pretrial motions | At least 35 days | Before trial |

16

| Event / Filing Requirement | Deadline | Relative to |
|---|---|---|
| File Trial Management Order (TMO) | At least 28 days | Before trial |
| Exchange proposed exhibits | At least 21 days | Before trial |
| File & email joint exhibit list | At least 7 days | Before trial |
| File & email joint witness list | At least 7 days | Before trial |
| File & email joint stipulated facts list | At least 7 days | Before trial |
| File & email joint order of proof | At least 7 days | Before trial |
| Hold Trial Management Conference | At least 7 days | Before trial |
| File trial briefs | At least 7 days | Before trial |
| File stipulated jury instructions & verdict form | At least 7 days | Before trial |
| File disputed jury instructions & verdict form | At least 7 days | Before trial |
| Electronically file jury-question requests | At least 7 days | Before trial |
| Serve objections to deposition testimony | At least 3 days | Before trial |
| Provide highlighted deposition transcripts to Court | At least 3 days | Before trial |
| Notify the Court of settlement or resolution | Within 24 hours | Of settlement |
| Electronically file all admitted & rejected exhibits | Within 7 days | Of trial conclusion |
| Maintain custody of withdrawn exhibits until | Until 63 days | After appeal-review period ends |

# EXHIBIT A-4

Webex Procedures

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock St., Denver, Colorado 80202<br>(303) 606-2300 | DATE FILED<br>April 9, 2026 4:15 PM<br>CASE NUMBER: 2026CV31212 |
| Plaintiff(s): NOBLE ELITE TELEMONITORING SERVICES, LLC<br><br>v.<br><br>Defendant(s): ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC. d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD | ▲ COURT USE ONLY ▲ |
| | Case No.: 2026CV31212<br><br>Courtroom:    414 |
| **WEBEX PROCEDURES – DENVER DISTRICT COURT**<br>**Courtroom 414** | |

For proceedings conducted virtually in Courtroom 414, the following procedures apply. Counsel is responsible for ensuring—**before** any virtual proceedings—that they, their clients, and their witnesses: 1) are aware of and able to comply with these procedures; 2) have the appropriate equipment to be able to access Webex; 3) have the remote access/call-in information; 4) and know how to and are able to access the Webex.

Although audio-video participants will initially be placed into a virtual "waiting room" before being admitted to the Webex session, the courtroom will be open to the public during all Webex hearings unless otherwise ordered by the Court.

**WEBEX CONNECTION STEPS**

The Court will use Cisco Webex for audio-video participation in virtual proceedings. To join a Webex session as a video participant, you must first install the Webex Meetings application ("app") on your computer or smart phone. You can obtain the app through an app store or at webex.com. To connect to a Webex session, please follow these steps:

- Open Webex Meeting app.
- In the Join a Meeting field, enter the following 9-digit Access Code: **2599 379 4016**.

1



- Click the Join button.

- You will be directed to the Preview Screen:



- Make sure "Use computer for audio" is selected. If not, drop down the list and select it.
- Click the Join Meeting button.
- You will then be placed in a virtual "waiting room" or "lobby."
- Court staff will admit audio-video participants into the Virtual Courtroom when the Court is ready for proceedings to begin.
- Mute your audio if you are not speaking.

   Below is the Webex link for Courtroom 414:
   https://judicial.webex.com/meet/d02-dnvr-courtroom414

   You can also call in using a regular phone without video—unless you are a witness or counsel with any speaking role, *see* below—in which case you will participate in the session just as you would participate in an appearance by phone. For dial in only, call (720) 650-7664, enter the Access Code: **2599 379 4016** followed by #, enter # again when prompted for a participant number.

## WEBEX CONFERENCE GROUND RULES

- Webex hearings are Court proceedings and all participants shall follow ordinary standards of decorum. Please ensure that you, your clients, and your witnesses are

2

dressed as you would be in Court, that your surroundings are quiet and well lit, that your electronic devices are functioning, that you have an adequate internet connection and power supply, that distractions in the location from which you are participating are minimized, and that you know how to access the system before the hearing.

- You should log in or call in at least 5 minutes before the proceeding in your case is scheduled to begin. If you are admitted to the Virtual Courtroom before your proceeding begins, please do not interrupt any ongoing proceedings; wait for your case to be called and acknowledged by the Court.

- Attorneys shall forward the meeting information to their clients and any witnesses. It is the responsibility of the attorney to ensure clients and witnesses have the necessary contact information and are able to access and utilize Webex.

- Attorneys with any speaking role appearing via Webex must appear by video, unless they have obtained prior leave of the Court.

- Any witness testifying via Webex must appear by video.

- Communications constituting impermissible coaching of a witness are strictly prohibited. Prohibited communications with a witness while testifying include third-party communications, electronic communications, or communications in any other form. Violation of this prohibition may result in the imposition of sanctions including contempt of court.

- Audio and/or video recording of any portion of a Webex hearing is strictly prohibited. Violation of this prohibition may result in the imposition of sanctions including contempt of court.

- **All proposed exhibits must be uploaded prior to any hearing**. Any audio or audiovisual recording that may be offered into evidence must be provided to the Court in advance of the hearing on a flash-drive and must be in a format that can be played without proprietary software. Counsel is expected to know how to utilize the "share screen" function in Webex to publish exhibits for all participants. Parties are required to confer in good faith in an attempt to reach stipulations concerning the authenticity and admissibility of exhibits and other evidentiary issues prior to the hearing commencing.

The procedures outlined herein are evolving and may be modified or updated periodically. Importantly, these procedures supplement but do not supplant the expectations and requirements of parties contained in the Court's Delay-Reduction and Pre-Trial Orders. If questions arise, please contact the Court's staff at (303) 606-2429.

BY THE COURT:

_____

Ian J. Kellogg
District Court Judge

3

# EXHIBIT A-5

Civil Case Cover Sheet

☐**FORM 1.2. DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND**

DATE FILED
April 14, 2026 7:35 AM
FILING ID: DF288894E0B87
CASE NUMBER: 2026CV31212

| | |
|---|---|
| District Court __Denver_____ County, Colorado<br>Court Address: 1437 Bannock Street, Denver, CO 80202<br><br>_____<br><br>Plaintiff(s): Nobile Elite Telemonitoring Services, LLC<br>v.<br>Defendant(s): Rocky Mountain Hospital and Medical Service, Inc. | FILING ID: DF288894E0B87<br>CASE NUMBER: 2026CV31212<br><br><br>▲ COURT USE ONLY ▲ |
| Attorney or Party Without Attorney (Name and Address):<br> Brian A. Williamson, Esq.<br> 2550 W. Union Hills Ave, Suite 350-341, Phoenix, AZ 85027<br>Phone Number: (201) 261-1700    E-mail: bwilliamson@callagylaw.com<br>FAX Number: (201) 549-8408    Atty. Reg. #: 336547 | Case Number:<br>2026CV31212 |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT,
COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT
AND JURY DEMAND**

1.  This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR),, Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases or in Water (CW) proceedings subject to sections 37-92-302 to 37-92-305, C.R.S. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2.  Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

    ☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

    ☒ This party is seeking a monetary judgment against another party of more than $100,000.00, exclusive of interest and costs, as supported by the following certification:

    By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000.

    **Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply
to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. *See* C.R.C.P. 38.
(Checking this box is optional.)

**Date:** _____

_____
        **Signature of Party**

**Date:** _____04/14/2026_____

*Brian Williamson, Esq.*
_____
        **Signature of Attorney for Party (if any)**

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a
complaint, counterclaim, cross-claim, or third party complaint.

# EXHIBIT A-6

Summons

| District Court, __Denver_____County, Colorado<br>Court Address:<br> 1437 Bannock Street<br> Denver, CO 80202<br><br>Plaintiff  NOBLE ELITE TELEMONITORING SERVICES, LLC<br><br>v.<br><br>Defendant  ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICES,<br>        INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD | DATE FILED<br>April 14, 2026 7:35 AM<br>FILING ID: DF288894E0B87<br>CASE NUMBER: 2026CV31212<br><br>▲  **COURT USE ONLY**  ▲<br><br>Case Number:  2026CV31212<br><br><br>Division:      Courtroom: |
| **DISTRICT COURT CIVIL SUMMONS** ||

**TO THE ABOVE NAMED DEFENDANT:**  ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICES, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint.  If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you.  If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you.  Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: _____

_____
Clerk of Court/Clerk

*Brian Williamson, Esq.*
Signature of Plaintiff

 2550 W. Union Hills Avenue, Suite 350-34, Phoenix, AZ 85027
Address of Plaintiff

C/O Brian Williamson, Esq.

201-261-1700 / bwilliamson@callagylaw.com
Plaintiff's Phone Number

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:**  A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal.  The plaintiff has 14 days from the date this summons was served on you to file the case with the court.  You are responsible for contacting the court to find out whether the case has been filed and obtain the case number.  If the plaintiff files the case within this time, then you must respond as explained in this summons.  If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

JDF 600   R10-13    DISTRICT COURT CIVIL SUMMONS

# EXHIBIT A-7

Acceptance of Service

| | |
|---|---|
| DENVER DISTRICT COURT<br>1437 Bannock Street<br>Denver, CO 80202<br>United States<br>(303) 606-2300 | ▲ COURT USE ONLY ▲ |
| Plaintiff: **NOBLE ELITE TELEMONITORING SERVICES, LLC**<br><br>v.<br><br>Defendant: **ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD** | Case No: 2026CV31212<br><br>Division:<br><br>Courtroom: |
| Attorneys for Plaintiff:<br><br>*Brian A. Williamson (CO Bar No.336547)<br>Callagy Law<br>2550 W. Union Hills Ave., Ste. 350-341<br>Phoenix, AZ 85027<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>(201) 261-1700<br>(201) 549-8408 (facsimile)<br>bwilliamson@callagylaw.com | |
| **ACCEPTANCE OF SERVICE** | |

I declare under oath that I, the undersigned counsel, represent the Defendant, Rocky Mountain Hospital and Medical Service, Inc. D/B/A Anthem Blue Cross and Blue Shield, in this case, that I have received and accepted service on this 14th day of May, 2026, of the Summons

1

329749249v1

and a copy of the Complaint. This waiver of service shall not be construed as an admission by

me of the truth of the allegations in the Complaint and I reserve the right to receive notices of

settings and the right to respond and appear in this case.

It is further agreed that Defendants' time to answer, move, or otherwise respond to the

Complaint shall be sixty (60) days from the date of this Acceptance of Service.

## **VERIFICATION**

I declare under penalty of perjury under the law of Colorado that the foregoing is true and

correct.

> TROUTMAN PEPPER LOCKE, LLP
> Attorney for Defendants
>
> By:  */s/ Angie Shewan*
> Angie Shewan
> 600 Peachtree Street NE
> Suite 3000
> Atlanta, GA 30308
> 407-832-6002
> Angie.Shewan@troutman.com

2

329749249v1